This was a suit for divorce for desertion, sharply litigated. On December 5th, 1916, a decree nisi was entered in favor of the petitioner, which made a final decree due to him on June 6th, 1917, unless appeal were taken or cause shown to the contrary as provided in our Divorce act (P.L. 1907 p. 474 § 21), as follows:
"A decree nisi shall become absolute after the expiration of six months from the entry thereof, unless appealed from or proceedings for review are pending, or the court before the expiration of said period for sufficient cause, upon its own motion, or upon the application of any party, whether interested or not, otherwise orders; and at the expiration of six months such final and absolute decree shall then be entered upon application to the court by the petitioner, unless prior to that time cause be shown to the contrary. Appeals shall be taken only from the decree nisi and not from the final decrees, and shall be taken within six months from the filing of the decree nisi."
No proceedings for review (except an appeal which was not prosecuted) were ever instituted, and no cause shown why the decree nisi should not be made absolute, nor was a final decree ever entered. The facts are these:
On November 27th, 1916, petitioner received from his then solicitor a letter informing him that a decree nisi had been signed and that a certified copy should be received in the course of a few days, and, when received, petitioner would be notified that he might call at the solicitor's office and obtain a copy, which he did, and was informed by his then solicitor that he had received a certified copy of the decree nisi, and handed a copy of the same to petitioner. At that time that solicitor informed petitioner that he was then divorced from his wife, but had to wait six months before he could marry again. On June 8th, 1917, petitioner, having become engaged *Page 423 
to marry, visited the office of his then solicitor and asked him whether he could then legally marry, whereupon the solicitor informed him that his wife had attempted to hold up his divorce by filing an appeal, but that she was one day late, as she had not filed it until after the six months had elapsed, namely, on the 6th day of June, 1917, and that such appeal did not amount to anything, as it was too late, and that the petitioner could proceed to be married just as soon as he wanted to; that he, the solicitor, would proceed, however, to have the appeal dismissed as not having been filed in time, which he never did. The petitioner did not know what the term nisi meant, but from reading the copy of the decree he supposed that he was divorced from his wife unless sufficient cause should be shown to the court why such decree should not be made absolute within six months from its date, and supposed that his right to remarry was only suspended until the expiration of six months, and honestly believed that when his then solicitor informed him that he could marry again, as the six months had elapsed, notwithstanding the appeal by his wife, which was filed a day late, that he had a perfect right to remarry, and he did so on June 8th, 1917, and has cohabited with his second wife ever since. From the time of the trial of the divorce action in 1916 until September, 1925, when she had him arrested for non-support, petitioner had never seen or heard of the wife from whom he obtained the decreenisi. And now, in the circumstances above detailed, he moves for the entry of a final decree herein nunc pro tunc as of the time he was first entitled to it. The files in this case disclose the fact that nothing was done by either side with reference to the appeal, after the filing of the notice thereof, no step having been taken in the appellate court by the filing of a petition of appeal or otherwise.
The petitioner was correctly advised by counsel that the appeal was a nullity, having been taken out of time, because then the rights of the successful party to the litigation had become vested. Smith v. Walton, 96 N.J. Eq. 421; see, also, Plahn
v. Givernaud, 85 N.J. Eq. 143. There is no provision *Page 424 
in our Divorce act which would prevent the entry of a final decree of divorce nunc pro tunc. Although a decree nisi for divorce, or nullity of marriage, cannot be made or entered nuncpro tunc, but must be dated in the body and filed and docketed on the same day and at the same time, to the end that the time provided by the statute (P.L. 1907 p. 474 § 21) for appeal, or showing cause why the decree nisi should not be made absolute after the entry thereof, shall neither be abridged nor abolished. Markowitz v. Markowitz, 94 N.J. Eq. 23.
In Pratt v. Pratt, 157 Mass. 503, a woman obtained a decreenisi in divorce proceedings in that commonwealth. Before the expiration of six months, while living in another state, she wrote her attorney in the divorce proceedings to have the papers of her divorce sent to her at once, and asking if it was necessary for her to appear personally to have the divorce granted, and she received a reply from him stating that the six months would not expire until the next month; that he would then attend to having the decree made absolute, and that it would not be necessary for her to appear personally. The attorney was prevented from attending to the matter by reason of illness. The libellant, supposing that her attorney had attended to the matter, and that her divorce had been made absolute, after the six months had expired, without doing anything more as to her divorce, married again in the other state, in good faith, believing that she had a legal right so to do, and lived with the man whom she had married until she learned that the divorce had not been made absolute, and that the marriage was not valid. And it was held that these facts would warrant a finding that the libellant was not guilty of negligence, and that she honestly believed, and had reason to believe, in the evidence of a fact which, if true, would have made her remarriage lawful. The court observed (at p. 507) that "where a libellant has obtained a decree nisi, and after waiting the time required by law, believing, and having reasonable ground to believe, that he has obtained a decree absolute, being guilty of no negligence, marries again and cohabits with the person he has married, *Page 425 
he ought not to be prevented, in our opinion, from having his decree nisi made absolute." And this holding of the Massachusetts supreme judicial court, I take it, is entirely consonant with the reasoning of our court of errors and appeals in the cases of Robinson v. Robinson, 84 N.J. Eq. 201, andDolan v. Wagner, 96 N.J. Eq. 298.
It will be noted that the petitioner in the instant case falls clearly within the rule enunciated by the Massachusetts court, which I regard as entirely apposite in the case at bar.
Mr. Bishop, in his work on "Marriage, Divorce and Separation"
(vol. 2 § 687), says: "There may be a nunc pro tunc
judgment when the case falls within the principles on which such judgments are allowed in other suits." Citing Mead v. Mead,1 Mo. App. 247, 254; Webber v. Webber, 83 N.C. 280. The court in the Mead Case said: "Since this opinion was written we have learned that Mr. Mead has died. He was alive, however, when the case was argued and submitted. Under these circumstances the judgment will be entered as of the day on which it was taken under advisement, which was January 28th, 1876. Such was the practice of the supreme court in the case of Central SavingsBank v. Shine, 48 Mo. 456, following the ancient practice in England as laid down in Cumber v. Wane, 1 Stra. 426." And the court in the Webber Case said: "It is suggested that the action for a dissolution of the marriage tie, the end and object of which are consummated by death, rendering a judgment needless, does not fall under the control of a fiction adopted for other and different purposes. While the suggestion is not without force, we can find no legal ground for its exemption from the operation of a principle applicable to all other actions."
There is nothing in Dunham v. Dunham, 82 N.J. Eq. 395, which militates against the entry of a final decree for divorcenunc pro tunc. The Dunham Case only decided that a pending divorce abates upon the death of either party without surviving interest in anyone, and that a decree nisi of divorce may not be made absolute by a final decree after the death of one or the other of the parties, and which could not have been entered during the lifetime of both. Of course, it *Page 426 
could not, because the surviving party was not entitled to the decree in the lifetime of the other one. Not so in the case at bar, for here the petitioner was entitled to the divorce at and at all times on or after the 6th day of June, 1917, both parties being alive, as they still are. Petitioner is not obliged to apply for a final decree on the very day it is due, nor is there any time limit, statutory or otherwise, after which he may not obtain it. Whether or not petitioner may have it nunc pro tunc, after the lapse of years, as in this case, is a matter for determination on the particular facts of every given case.
Let a final decree of divorce be entered in this case nunc protunc as of June 6th, 1917, on which date the petitioner was, and has at all times since been, entitled to have the decree nisi
made absolute.